IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALICIA GRUSPE,

     Plaintiff,

v.                                                                          Civ. No. 10-1144 ACT/WDS

ERIC SHINSEKI, Secretary,
UNITED STATES DEPARTMENT
OF VETERAN AFFAIRS,

     Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Defendant's Motion to Strike Amended Complaint in Lieu of Answer [Doc. 50]; Defendant's Motion for Summary Judgment [Doc. 42]; and Plaintiff's Cross-Motion for Summary Judgment [Doc. 49].  For the reasons set forth below, the Motion to Strike is granted; Defendant's Motion for Summary Judgment is granted; and Plaintiff's Cross-Motion for Summary Judgment is denied.   Because all three of the motions are factually and procedurally intertwined, the Court will rule on all three in one Memorandum Opinion and Order.

Factual Background

Plaintiff was hired in June, 2008, at the Raymond G. Murphy V.A. Medical Center ("VA Medical Center"), which is part of the Department of Veterans Affairs ("VA"),  under an Excepted Appointment to serve as a Medical Technologist in the Pathology and Laboratory Medicine Service. Defendant's Memorandum in Support of Motion for Summary Judgment (Mem.SJ.), Exhibit [Dex] A [Doc. 43-1], Declaration of Rosemary Stewart, ¶¶ 1 & 3.  The Excepted Appointment means, *inter alia*, that employees are on a probationary period for one year and may be removed for any non-

discriminatory reason.  *Id*. at ¶ 3.  Additionally, new employees are subject to a 90-day employee placement review and evaluation.  *Id*. at ¶ 7.

Terraih Martinez was Plaintiff's immediate supervisor, and the individual who interviewed Plaintiff and recommend that she be hired.  Mem.SJ, Dex B [Doc. 43-6], Declaration of Terraih Martinez.  In July, 2008, Ms. Martinez was advised by the Blood Bank supervisor, Karen Chimarusti, that Plaintiff's Blood Bank training had not gone well and,  due to Plaintiff's numerous errors, staff questioned her competency and her ability to work alone on the night shift.  *Id*. at 5.  Ms. Martinez and the Hematology Supervisor, Mary Ann Lininger, decided to provide Plaintiff with additional training.  *Id*.  The supplemental training started on August 13, 2008, but did not go well.   Plaintiff did not complete all assigned tasks, had failed a checklist assignment, and received a failing grade on the Blood Bank technical competency test.  *Id*. at 6.

Ms. Martinez prepared an evaluation of Plaintiff and concluded that Plaintiff was not competent to perform the duties of her position.  *Id*. at 9 & Exhibit 1 to Martinez Declaration [Doc. 43-7].   She based her evaluation on input from others in the VA Medical Center's various departments.  *Id*. at ¶¶ 10 & 11 & Exhibit 1.  Ms. Martinez submitted her evaluation to Larry Massie, M.D., Chief of the VA Medical Center.  *Id*. at ¶ 12.  She did not recommend termination. *Id*.  However, her evaluation stated:

> Ms. Gruspe does not perform her tasks in a timely manner.  She has had conflicts with other employees.  Ms. Gruspe has failed to follow procedures, has failed competency assessments and has failed to comprehend and apply basic blood bank theory.  The evening shift requires Medical Technologists to perform tasks independently. . . .Ms. Gruspe has not demonstrated that she is competent to work independently as a Medical Technologist in the Laboratory on Evening shift.

Exhibit 1 to Martinez Declaration (Doc. 43-7) page 2 of 5.

In a Memorandum to the chief of human resources, Ms. Martinez states:

> Alicia has had conflicts with the blood bank technical specialist. She expressed concern to the blood bank supervisor and to her supervisor that this person did not like her and that is why she was doing poorly in the blood bank. We accommodated her by having other people train her in blood bank. The other trainers have had the same concerns as to Alicia's performance and competence. On 8/25/08 Alicia was notified of the other trainers' concerns.

Exhibit 1 to <u>Martinez Declaration</u> (Doc. 43-7) page 1 of 5.

Karen Chimarusti was Plaintiff's primary trainer when she began her Blood Bank training. <u>Declaration of Karen Chimarusti</u>, Mem.SJ, Dex.C [Doc. 43-8] at ¶ 6. At the end of Plaintiff's five-week training, Ms. Chimarusti concluded that Plaintiff "failed to complete all Checklist items; she failed the Check-Tech and Competency Test; and she worked very slowly and became confused when faced with multiple tasks." *Id*. at ¶ 14.

The Supervisor of Hematology/Blood Bank unit, Mary Ann Lininger, stated that throughout Plaintiff's orientation she "was apprised of a number of critical errors [Plaintiff had] committed. For example, she interpreted a patient's blood type incorrectly; she entered blood components into the computer system incorrectly; and she had difficulty identifying antibodies on problem patients. As of August 29, 2008, Ms. Gruspe had not completed all tasks on the checklist and failed to demonstrate mastery of the technical skills necessary to perform Blood Bank testing." <u>Declaration of Mary Ann Lininger</u>, Mem.SJ. Dex. D [Doc. 43-12] at ¶¶ 12-13.

Finally, the Chief of Pathology and Laboratory Medicine Service at the VA, Larry Massie, M.D., states that he had been advised of Plaintiff's poor performance and lack of competency as indicated from the aforementioned declarations. <u>Declaration of Larry Massie, M.D.</u>, Mem.SJ. Dex. E [Doc. 43-13] at ¶¶ 6 & 7. He states: "I had no reason to doubt the accuracy of Ms. Martinez's

assessment of Ms. Gruspe's skills or the assessments of Ms. Gruspe by her co-workers. . . .  Based upon this information, I alone decided to terminate Ms. Gruspe's employment." *Id*. at ¶¶ 7 & 8.  Dr. Massie avers that in his September 16, 2008 interview with Plaintiff he advised her of her errors and inaccuracies on the various examinations:  "Ms. Gruspe's insistence that her answers were correct confirmed that she lacked a basic understanding of Blood Bank policies and her removal from federal service was warranted." *Id*. at ¶ 10.

In her deposition, Plaintiff testified that Chimarusti discriminated against her due to Plaintiff's age.  The basis for this allegation was that Chimarusti told Plaintiff that Chimarusti had 20 years' experience.  Plaintiff testified that "the mention of her -- like 20 years, you know, 20 years in -- you know, in service like working, she has been mentioning many times to me that she has 20 years of experience.  Like -- its like telling me indirectly that I'm old."  Deposition of Alice Gruspe, Mem. SJ., Dex F [Doc. 43-16] 51:20-25; 52:1.  Plaintiff also alleges Chimarusti discriminated against her based on race and national origin:

> Q.  So let me see if I understand you.  What you're saying is you believe Ms. Chimarusti discriminated against you because she had knowledge of your age, national origin and race; is that correct?
>
> A.  Yes.

*Id*. at 61:6-10.

Plaintiff testified that was the sum total of her evidence of discrimination by Chimarusti. *Id*. at 65:21-23.  Plaintiff testified that Lenninger discriminated against her because Lenninger knew Plaintiff's age, her race, and where she came from because Lenninger had seen Plaintiff's application for employment. *Id*. at 78:13-22.  And Dr. Massie discriminated against her for the same reason:  he knew her age, her race, and where she came from. *Id*. at 79:25; 80:1-19.  Similarly,

Plaintiff believes that Martinez discriminated against her for the same reasons, *id*. 87:21-25, and because Martinez hadn't directly observed Plaintiff's work when she wrote her evaluation. *Id*. at 88:9-20.

<u>Procedural Background</u>

Plaintiff, appearing *pro se*, filed her Complaint in federal district court in Arizona on October 22, 2009 [Doc. 1]. She alleged her employer, Defendant United States Department of Veteran Affairs, had unlawfully terminated her employment on the basis of race, age, and national origin. She cited no legal authority in her Complaint, but her factual allegations fell under the provisions of Title VII, the Civil Rights Act of 1964, 42 U.S.C. § 2000e and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). The case was transferred to this Court on December 1, 2010 due to the fact that Plaintiff was employed at Defendant's Albuquerque facility and venue under either Title VII or the ADEA may lie in any jurisdiction. *See* Doc. 12.

The Complaint outlined in detail Plaintiff's version of events leading up to her termination. She alleges that on August 29, 2008, when she received an unfavorable evaluation, she "lost [her] mind." Complaint at 5. She then details her inability to focus or carry on any semblance of a normal day to day routine. *Id*. at 5-6. She alleges that her meeting with Dr. Massie left her "shocked" and that she was again "out of my mind." *Id*. at 6. She then details her depression, anxiety and confusion over the next two or three months, alleging that her termination and then her father's death caused her to be treated by a physician for stress and depression. *Id*. at 8.

With respect to her damages Plaintiff, as a federal employee, demanded a raise from GS-8 to GS 9, annual leave, sick leave, Thrift Saving Plan contributions and evening and weekend pay differentials. She also requested disciplinary action against those responsible for her termination,

5

compensatory damages for pain and suffering, and attorneys fees. *Id*. at 11. Defendant filed his answer to the Complaint on January 19, 2011. *See* Doc. 14. On February 28, 2011 the Court entered its Scheduling Order, setting August 26, 2011 for the end of discovery and September 12, 2011 as the deadline to file dispositive motions. *See* Doc. 21.

On June 15, 2011, Plaintiff obtained counsel. *See* Doc. 28. On August 1, 2011 counsel asked for concurrence for a motion to amend the complaint, to add one claim for relief; two weeks later, on August 18, 2011, Plaintiff filed a Motion for Leave of Court to Amended (*sic*) Complaint [Doc. 39]. The Motion requested that Plaintiff be allowed to add an additional claim, stated as follows:

> Plaintiff prays this Court for a declaratory judgment, or other equitable relief, remanding this case to the administrative level and finding, as a matter of law and fact, that at the time she was required to make EEO contact, the plaintiff's mental state was such that she suffered from severe mental incapacity and disability rendering her unable to meet the EEO deadline. As such, the plaintiff's EEOC complaint should not equitably have been dismissed.

*See* Motion to Strike [Doc. 50] and attachments thereto [Doc. 50-1].

Plaintiff did not attach a copy of her proposed amended complaint to the motion as required by D.N.M. LR 15.1, but because she only sought to add "one claim for relief," Defendant did not object and did not file a response to the motion.

On September 12, 2011 Defendant filed his Motion for Summary Judgment [Doc. 42]. One of the undisputed facts stated in the motion is that Plaintiff failed to exhaust her administrative remedies as required under both Title VII and the ADEA. Plaintiff had 45 days to contact the Department of Veterans Affairs Office of Resolution Management (ORM): from September 12, 2009 (when she was informed of her termination) until November 3, 2009. Plaintiff did not contact

6

ORM until November 12, 2009.  The Final Agency Decision dismissed her complaint based upon her untimely initiation of pre-complaint counseling.  *See* Mem. SJ UMF § 28 [Doc. 43]; Plaintiff's Response, [Doc. 49] at 7-8, ¶ 28.

On September 14, 2011 the Court entered its Order allowing Plaintiff to "file an amended complaint requesting the additional relief stated in the Motion within ten (10) days of the entry of this Order." [Doc. 44].[1]  Plaintiff filed her amended complaint on September 27, 2011 [Doc. 47].

Instead of adding the one claim for relief, as allowed by the Court, Plaintiff amended her complaint to assert new factual allegations alleging a new theory of relief, and voluntarily dismissing her initial Title VII and ADEA claims.   Thus, in her Response to Defendant's Motion for Summary Judgment, she argued that Defendant's contention  that she failed to exhaust her administrative remedies is moot, because she is not seeking Title VII or ADEA relief.  Response [Doc. 49] at 12.  She also included a Cross-Motion for Summary Judgment, requesting a declaration of mental incompetence and remand. On October 14, 2011 Defendant filed his Motion to Strike Amended Complaint in Lieu of Answer [Doc. 50].

Discussion

A.    Motion to Strike

Defendant argues that Plaintiff tricked him into agreeing to an amended complaint by representing she only wanted to add one claim for relief and then, after Defendant filed his motion for summary judgment, Plaintiff's responded that Defendant's motion addresses claims that have

---

[1] Rather than denying Plaintiff's motion for failing to comply with the Local Rules of Civil Procedure for the District of New Mexico by not attaching a copy of the proposed amended complaint to the motion (*see* D.N.M.-LR-15.1), the Court granted the motion since it was unopposed and Plaintiff was only asking that she be allowed to amend her complaint to request additional relief in the form of a declaratory judgment or other equitable relief.  *See* Doc. 39.

been voluntarily dismissed and therefore summary judgment is inappropriate.  Because the amended complaint was submitted after the close of discovery and after the dispositive motion deadline, the Court agrees Defendant may have been ambushed.  Indeed, the Motion to Amend filed by Plaintiff did not indicate to the Court that her federal claims were being voluntarily dismissed and that she was asserting an entirely new theory of recovery.

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Defendant's motion does not fit into any of these categories.  The Court has not found any authority governing the situation it faces herein, and the parties have cited to none.  Therefore, the Court will withdraw its earlier Order allowing the  motion to amend [Doc. 44] and treat Defendant's motion to strike as one objecting to Plaintiff's motion to amend and analyze the amended complaint under Fed.R.Civ.P. 15.

Rule 15 provides that a court should  "freely give" leave to amend when "justice so requires."  Leave to amend is a matter committed to the sound discretion of the district court. *See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc*., 820 F.2d 1127 (10th Cir.1987).  There are limits, however, to this rule.   Flagrant abuse, bad faith, futility of amendment, inordinate and unexplained delay, and prejudice to the opposing party are grounds to deny amendment.  *See Compton v. Rent-A-Center,* Inc,  2009 W: 3353094, **3 (10th Cir. 2009) (unpublished decision); *Minter v. Prime Equipment Company*, 451 F.3d 1196, 1204-1208 (10th Cir. 2006).  The Court will address each of these grounds as it applies to this case.

Flagrant abuse and bad faith.  Just as in the case *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137 (5th Cir. 1993), the Plaintiff moved to amend "in an attempt to avoid summary judgment."  *Id*. at 139.

8

Counsel entered his appearance on June 15, 2011 and was obviously aware of the facts of his client's case and yet did not move to amend until two months later: after Plaintiff had been deposed and just days before the scheduled end of discovery.  These facts would not ordinarily constitute flagrant abuse or bad faith, but the Court finds that counsel's representation that he only sought to "add" one claim when he instead inserted new factual allegations, dismissed Plaintiff's prior claims and changed the entire theory of the case without notice to the Court or the Defendant, was misleading and disingenuous at best.

   Futility of amendment.    Plaintiff asks this Court to issue a declaratory judgment that she was mentally incompetent during the time she was required to comport with administrative procedures to further her civil rights and ADEA claims. "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim . . . ." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999). Thus, a proposed amendment is futile if the complaint, as amended, would be subject to dismissal.  The Court finds  that  the amendment in this case would be futile.

   In this circuit, mental incapacity is not a ground for equitable tolling unless there are "exceptional circumstances." *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996).   Those exceptional circumstances are (i) an adjudication of incompetency; or (ii) institutionalization. *Id.. Accord Sullivan v. Harvey*, 2007 WL 2828895, *3 (10th Cir. 2007); *Hall v. United States Department of Labor*, 1999 WL 815830, *3 (10th Cir. 1999).  In this case, Plaintiff only alleges that she "lost her mind" and was prescribed Valium, neither of which constitutes "exceptional circumstances."

Inordinate and unexplained delay.  In this circuit, delay alone is insufficient to deny a motion to amend.  Instead, the Court "focuses primarily on the reasons for the delay. . . . [D]enial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay.'"  *Minter*, 451 F.3d at 1206 (citing *Frank v. U.S. West*, 3 F.3d 1357, 1365-66 (10th Cir. 1993)).

"Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target, to salvage a lost case by untimely suggestion of new theories of recovery, to present theories seriatim in an effort to avoid dismissal, or to knowingly delay raising an issue until the eve of trial."  *Id.*  (internal quotation marks, citations, and brackets omitted).

Plaintiff has offered no explanation for waiting two months from the time of counsel's representation until the filing of the motion to amend.  All facts were known, or discoverable, at the time counsel was retained.[2]  The Court finds that Plaintiff's proposed amendment is designed "to salvage a lost case" by the untimely assertion of a new theory of recovery.

Prejudice.  Prejudice to the opposing party is the "most important" factor when deciding a motion to amend.  *Minter*, 451 F.3d at 1207.  "Courts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment.  Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."  *Id.* at 1208 (internal quotation marks and citations omitted).

---

[2]  Another inexplicable delay was the time between Defendant's agreement to the amended complaint, around August 1, 2011, to the filing of the motion to amend the complaint, August 18, 2011.

In this case, Plaintiff abandoned her original theories of recovery, asserted a new claim and requested a new remedy eight days before the end of discovery and less than a month prior to the time to file dispositive motions.  As indicated earlier, the Court is also concerned about Plaintiff's tactics.  Defendant based his motion for summary judgment on the theories advanced by Plaintiff in her original complaint.  Presumably, Defendant based his deposition questioning of Plaintiff on the theories she set forth in her original complaint.  Discovery had concluded by the time Plaintiff filed her amended complaint.  Therefore, the Court finds that Defendant was prejudiced by Plaintiff's last minute amendment.

Based on the foregoing, Plaintiff has failed to meet the criteria required to allow amendment of her complaint and therefore the Motion to Amend [Doc. 39] is denied.

B.       Defendant's Motion for Summary Judgment

Summary judgment is appropriate only in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed.R.Civ.P. 56©.  An issue of fact is "genuine" if there is sufficient evidence so that a rational trier of fact could find for the non-movant.  *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  "An issue of fact is 'material if, under the substantive law, it is essential to the proper disposition of the claim.'"  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  The burden is on the movant to show there is an absence of evidence to support the non-moving party's case.  *Celotex*, 477 U.S. at 325.

<u>Exhaustion</u>

"In this circuit, the exhaustion of administrative remedies remains a jurisdictional prerequisite to bringing suit under Title VII or the ADEA." *Logsdon v. Turbines, Inc.*, 2010 WL 4118811, **2 (10th Cir. 2010) (unpublished decision) (citing *Shikles v. Spring/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (ADEA) and *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (Title VII)).[3]

"When a plaintiff asserts claims of employment discrimination against the federal government, he must satisfy various regulatory pre-filing requirements to exhaust his administrative remedies.  Specifically, a plaintiff alleging a Title VII or ADEA violation by a federal agency must file a formal complaint with that agency.  29 C.F.R. § 1614.106(a) ("A complaint must be filed with the agency that allegedly discriminated against the complainant."); 29 C.F.R. § 1614.407 (explaining that a plaintiff cannot file a civil action under Title VII or the ADEA until he has filed a formal complaint.")." *Yarberry v. Vilsack*, 2011 WL 3156989, *3 (D. Colo. 2011) (unpublished decision) (some citations and internal quotation marks omitted).

It is undisputed that Plaintiff did not exhaust her administrative remedies.  As noted by Defendant, Plaintiff has admitted that she contacted the Department of Veterans' Affairs Office of Resolution Management (ORM) after the 45-day deadline and that she was aware of the deadline and the possible consequences of dismissal for failing to meet the deadline.  Her request for equitable relief is based on the fact that she suffered from "symptoms of anxiety and depression"

---

[3]  The *Logsdon* court noted that "[t]he Tenth Circuit is the only circuit in which EEOC exhaustion is still considered jurisdictional."  2010 WL 4118811, **2 n.2.

of such severity that she was "unable to compl[y] with the administrative requirements relating to her EEO complaint of discrimination."  *See* Doc. 52-2.

<u>Title VII and ADEA claims</u>

Alternatively, the Court addresses the merits of Plaintiff's Title VII and ADEA claims. Plaintiff alleges she was discriminated against based on race, national origin, and age.  To establish a *prima facie* case of discrimination based on race or national origin, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position of employment she held; (3) despite her qualification she was terminated; and (4) the job was not eliminated after her discharge. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a *prima facie* case of age discrimination, Plaintiff must show that (1) she is within the protected age group; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position was filled by a younger person.  *Adamson v. Multi-Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir.2008).  Under the ADEA, a "plaintiff is not required to show that age was the sole motivating factor in the employment decision. Thus a plaintiff need not prove that the reasons offered by the defendant are false if he proves that age was also a reason, and that age was the factor that made a difference." *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1170 (10th Cir.1985) (citations omitted).

The *McDonnell Douglas* case also sets forth the familiar burden-shifting analysis utilized under both Title VII and the ADEA.  That is, once a *prima facie* case has been established, if the plaintiff has no direct evidence of discrimination she can establish her claim by circumstantial evidence.  *Sanders v. Southwestern Bell Tel. L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008), *cert. denied*, -- U.S. --, 130 S.Ct. 69 (2009).  If the plaintiff carries her burden of establishing a *prima*

13

*facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action.  If the defendant does so, the burden shifts back to the plaintiff to show that race, national origin or age was a determinative factor in the adverse employment action, or to show that the defendant's stated reason was merely pretext.  *Martinez v. Target Corp.*, 384 Fed. Appx. 840, 849 (10th Cir. 2010) (unpublished decision) (Title VII); *Rodriguez v. Miller Waste Mills, Inc.*, 72 Fed. Appx. 839, 844 (10th Cir. 2003) (unpublished decision) (ADEA).

Assuming, *arguendo*, that Plaintiff has established a *prima facie* case for Title VII and ADEA discrimination, the Court now determines whether Defendant has set forth legitimate, nondiscriminatory reasons for terminating Plaintiff.  The following facts are stated by Defendant and are undisputed.

After Plaintiff received some initial training, Technical Specialist Karen Chimarusti determined that Plaintiff needed additional instruction.   Mem.SJ., UMF ¶ 10.  After Plaintiff received the additional training, she failed a test to detect the presence of antibodies and failed to identify the antibodies present in the sample.  UMF ¶ 13.  She was given a Technical Competency Test, on which she received a failing grand.  UMF ¶¶ 14 & 15.  At the end of Plaintiff's 90-day probationary period of employment, her supervisor determined Plaintiff was not competent to perform the duties of her position.  UMF ¶ 18.  The test results and evaluations were sent to, *inter alia*, the chief of the laboratory, Larry Massie, M.D., who determined that Plaintiff's employment should be termination.  UMF ¶¶ 20-22.  Dr. Massie met with Plaintiff on September 12, 2008 to discuss her termination and Plaintiff tendered her resignation on September 16, 2009.  UMF ¶¶ 22-24.

14

On November 12, 2008 Plaintiff contacted the Department of Veterans Affairs Office of Resolution Management (ORM) to initiate pre-complaint counseling.  UMF ¶ 26.  On December 22, 2008, Plaintiff filed her Complaint of Employment Discrimination with ORM.  UMF ¶ 27.  On February 12, 2009, ORM issued a Final Agency Decision dismissing Plaintiff's Complaint based on her failure to initiate pre-complaint counseling within 45 days of the date of the matter alleged to be discriminatory.  UMF ¶ 28.

In her Response [Doc. 49], Plaintiff denies that she was told she could not work alone; she "denies the Defendant's assertions to the extent that she repeated the test correctly;" she claims the failing grade she received was due to Ms. Chimarusti's failure to give proper procedures; and she denies that Dr. Massie determined to terminate her position  based on the reasons he stated.  In short, Plaintiff's claims of discrimination are based on her own subjective belief and her disagreement with her employer that she was not able to do her job.

Plaintiff does not offer rebuttal evidence in support of her beliefs.  Faced with a properly supported summary judgment motion, a plaintiff may not rest on mere allegations or denials, but rather is required to assert specific facts which would create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986).  "[E]vidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be merely colorable or anything short of significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991) (citing *Anderson*, 477 U.S at  248). "This is because when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).  *See United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir.1997) ("Where a

movant has met the initial burden required to support summary judgment, the non-movant then must either establish the existence of a triable issue of fact under Fed.R.Civ.P. 56(e) or explain why he cannot ... under Rule 56(f)." (quotation omitted)).

Defendant's Motion for Summary Judgment is properly supported by undisputed facts regarding Plaintiff's claims under Title VII and the ADEA. The overwhelming evidence is that Plaintiff could not perform competently in her position and therefore she was faced with being terminated or allowed to resign. Plaintiff has failed to come forward with any evidence that her race, her national origin or her age was a motivating or determining factor in the adverse employment action. *See Forest v. Baptist Home Ass'n of the Rocky Mountains, Inc.,* 16 F.3d 416, 1994 WL 41275, *2 (10th Cir. 1994) (unpublished decision) (citing *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.3d 1115, 1119 (10th Cir. 1991) (Title VII) and *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (1988) (ADEA)).

Instead of rebutting Defendant's evidence, Plaintiff submits her Cross-Motion for Summary Judgment, seeking a declaration of incompetence. Plaintiff ignores her Title VII and ADEA claims and bases her motion on her new theory of the case. *See* Doc. 49, § II, ¶¶ 1-10. As she states in her response to Defendant's Motion to Strike, she has voluntarily dismissed her Title VII and ADEA claims and now seeks remand. Although the Court will grant Defendant's Motion to Strike and withdraw its previous order allowing the Plaintiff to file her amended complaint, the Court will address the merits of Plaintiff's Cross Motion for Summary Judgment.

      2.    <u>Plaintiff's Cross Motion for Summary Judgment</u>

Plaintiff lists 10 facts in support of her motion. These facts all concern her mental state after her termination and the death of her father. For example, she states she was prescribed Valium for

16

her "severe anxiety and depression."  Plaintiff's Uncontested Fact ¶ 6.  She provides a brief history of her grief, depression, and anxiety and concludes that she was "medically incapable of adhering to any rigid, complex, and/or confusing tasks or requirements, such as adhering to deadlines like the forty-five (45) day EEO contact requirement."  *Id.* at ¶ 9.

In support of her cross motion for summary judgment and her claim of mental incompetence, Plaintiff submits the unsworn statement of Lulu Yang, M.D. [Doc. 49-2].  Materials submitted by parties in support of or in opposition to summary judgment must be admissible at trial.  *Celotex*, 477 U.S. at 324.  Unsworn opinions by expert witnesses or treating physicians do not meet the requirements of Rule 56(e) and cannot be considered in ruling on summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970).  Although the Tenth Circuit Court of Appeals has not ruled on this issue, other courts have disallowed such unsworn testimony.  *See Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1463 (D. Colo. 1997 (collecting cases).

In any event, other grounds exist to disregard Dr. Yang's statement.  First, Dr. Yang has never been identified as a witness, either as a treating physician or an expert.  A Court may refuse to consider expert opinions that are not timely disclosed under the Court's discovery rules and scheduling orders.  *See* Fed.R.Civ.P. 37(c)(1).

Second, Dr. Yang's statement that "Ms. Gruspe was rendered incapacitated by her medical condition . . . ." is refuted by the evidence.  As Defendant notes, after Plaintiff was given notice that her employment terminated on Friday, September 12, 2008:

> Plaintiff spent the weekend working on her response to the 90-day review [Doc. 1 at 7], and attended church on September 14, 2008. [Dex J at 173].  Plaintiff reported to work the following Monday and Tuesday.  [Doc. 1 at 7]  On Monday, September 15, 2008, Plaintiff worked in the Chemistry unit and met with the VA's EEO manager to ask about the EEO complaint process.  [Doc. 1 at 7; Doc. 43-17 at

17

2, ¶ 5].  On Tuesday Plaintiff prepared and tendered her letter of resignation.  [*Id*.]  Plaintiff took the next two days off and reported to work again on September 19, 2008.  [*Id*.]

Defendant's Reply in Support of Motion for Summary Judgment, [Doc. 52] at 6.

Plaintiff then drove from Albuquerque to Tucson, Arizona on September 19, 2008 and two days later visited her father in the hospital.  *Id*.  Defendant then notes that Plaintiff helped make her father's funeral arrangements, traveled between Arizona and Texas, and in general completed many tasks during the time she claims she was rendered "incompetent."  *Id*. at 7.

Defendant raises several other grounds for denial of Plaintiff's claims, and the Court finds that two of them are dispositive without discussing the other grounds raised by Defendant.  First, the motion is untimely.  The Cross Motion was filed on September 29, 2011; the deadline for dispositive motions, as set out in the Scheduling Order [Doc. 21] was September 12, 2011.  The Court may decline to consider an untimely motion.  *Continental Cas. Co. v. Multiservice Corp*., 2009 WL 1788421, *2 (D. Kan. 2009) (unpublished decision).

Finally, the Court finds that Plaintiff's motion is futile.  As discussed *supra* at page 9, Plaintiff has offered no evidence that she was declared  mentally incompetent or was institutionalized as required to equitably toll  the 45-day deadline.   *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1268 (10th Cir. 1996).   Thus, Plaintiff's Cross Motion for Summary Judgment is denied as a matter of law.

IT IS THEREFORE ORDERED that the Court's Memorandum Opinion and Order [Doc. 44] granting Plaintiff's Motion to Amend [Doc. 39] is withdrawn;

IT IS FURTHER ORDERED that Defendant's Motion to Strike Amended Complaint in Lieu of Answer [Doc. 50] is granted;

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Doc. 42] is granted; and

IT IS FURTHER ORDERED that Plaintiff's Cross-Motion for Summary Judgment [Doc. 49] is denied.

_____

Alan C. Torgerson
United States Magistrate Judge, Presiding